**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1268

ACA FINANCIAL GUARANTY CORPORATION; UMB BANK, NA,

Plaintiffs - Appellants,

v.

CITY OF BUENA VISTA, VIRGINIA; PUBLIC RECREATIONAL
FACILITIES AUTHORITY OF THE CITY OF BUENA VISTA, VIRGINIA,

Defendants - Appellees,

and

RUSSELL J. SINGER and DOUGLAS L. SBERTOLI, SR.,

Trustees.

Appeal from the United States District Court for the Western District of Virginia, at
Lynchburg. Norman K. Moon, Senior District Judge. (6:17-cv-00013-NKM-RSB)

Argued: October 31, 2018                    Decided: February 21, 2019

Before GREGORY, Chief Judge, and THACKER and QUATTLEBAUM, Circuit
Judges.

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Chief
Judge Gregory and Judge Thacker joined.

**ARGUED:** Scott Carlton Ford, Brian Aaron Richardson, FORD RICHARDSON, PC, Richmond, Virginia, for Appellants. Kevin M. Rose, BOTKINROSE PLC, Harrisonburg, Virginia, for Appellees. **ON BRIEF:** Michael W. Sharp, BOTKINROSE PLC, Harrisonburg, Virginia; Brian J. Kearney, W. Wayne Heslep, HESLEP & KEARNEY PC, Lexington, Virginia, for Appellees.

QUATTLEBAUM, Circuit Judge:

In this appeal, we review an order dismissing a complaint that arose from a troubled bond transaction involving a municipal golf course in the City of Buena Vista, Virginia (the "City"). Bonds were issued to refinance debt on the golf course and the repayment of the bonds depended on the City making payments on the lease of the golf course. When it failed to do so, this litigation ensued. The primary question on appeal is whether the City's obligation to make rent payments is legally enforceable when the obligation is expressly subject to the City's annual decision to appropriate funds. Finding that the answer is no, we affirm the district court's dismissal of the complaint.

I.

Plans for a golf course in the City date back to 2002. In that year, the Commonwealth of Virginia created the Public Recreational Facilities Authority (the "Authority") to construct, operate and maintain public recreational facilities for the benefit of the City. In 2003, the Authority, at the request of the City, took out a loan to finance the construction of a municipal golf course called the Vista Links Golf Club (the "Golf Course").[1]

_____

[1] The facts that led to the City's interest in a golf course and the subsequent problems with this course are not in the record nor material to this Court's decision. However, the events that are described in this case generally follow trends in the golf industry. In the early 2000s, there was a noticeable rise in the popularity of golf. *See* Steven J. Wernick, *Diamonds in the Rough: Judicial Reaction to Golf Course Conversations*, 2017 WL 1098131, 30 No. 4 ZONING & PLANNING LAW REPORT 1 (April 2007). Tiger Woods' dramatic entry and domination in the golf world brought a wave of new golfers to the sport. *Id*. What is known as the "Tiger Woods Effect" led to increased television ratings and golf related sales. *Id*. However, monetization of the increased
(Continued)

3

In 2005, the City and the Authority sought to refinance the loan on the Golf Course. To accomplish this, the Authority issued over $9 million in bonds. The Authority and SunTrust Bank (the "Bank") entered into a Trust Agreement which described how the bonds would be issued, how they would be repaid and the rights of the parties in the event the bonds were not repaid.[2] The Authority used the bond proceeds to pay off the existing loan on the Golf Course.

To have a source of revenue to repay the bonds, the Authority leased the Golf Course to the City. Under the Lease Agreement, the City agreed to make rent payments as well as maintain and operate the Golf Course. The Authority agreed that the rent payments would be used to repay the bonds. The rent payments from the City, therefore, were the financial linchpin of the transaction. Critically, however, the City never made an absolute commitment to make the rent payments. Under the Lease Agreement and the

---

popularity of golf did not always extend to golf courses. *Id*. While the number of golf courses increased, the number of rounds of golf played per year roughly stayed the same. Thus, some golf courses became the victim of too much supply and not enough demand. According to the National Golf Foundation, a trend began in 2006 where each year significantly more golf courses closed than opened. National Golf Foundation, *NGF Issues 2018 Golf Industry Report: Consolidated State-of-the-Industry Report Features Participation and Course Supply Dada*, NGF Quarterly, May 2018, https://www.thengfq.com/2018/05/ngf-issues-2018-golf-industry-report/.

[2] UMB Bank, N.A. is the successor-in-interest to SunTrust Bank.

4

other financing documents, the City's obligation was subject to its decision to appropriate funds each year.[3]

Other documents in the bond transaction gave the Bank rights as a creditor in the event the bonds were not repaid. The City issued a Deed of Trust to the Bank where the City pledged its existing City Hall building and police station as security. Similarly, the Authority issued a Deed of Trust to the Bank where the Authority pledged the Golf Course as security. Both the City Deed of Trust and the Authority Deed of Trust (collectively "Deeds of Trust") along with the Trust Agreement contain provisions outlining the Bank's creditor rights to this collateral.

The Bank retained ACA Financial Guaranty Corporation ("ACA") to provide insurance on the bonds. Through this arrangement, ACA received insurance premiums, and, in return, agreed to pay off the bonds if there was a default in repayment. In such a situation, ACA would front the costs of paying off the bonds and then assume the Bank's rights to receive rent payments and to enforce other creditor rights.

In 2010 and 2011, the City failed to appropriate enough money to fully pay the rent due on the Golf Course lease. As a result, the Authority could not repay the bonds. After discussions and negotiations, the parties entered into the Forbearance Agreement.

---

[3] The reason for this arrangement is not clear from the record. However, because the City's charter requires "any bonded indebtedness" to be approved through a referendum "passed by a majority of the qualified voters," *see* City of Buena Vista (Va.) Charter § 2.214, the City could not simply enter into a long-term loan agreement with the Bank. An obligation subject to the City's decision to make appropriations avoided the requirement of having the electorate vote on the debt.

5

Under the Forbearance Agreement, ACA agreed to make up any shortfall resulting from the City's failure to make rent payments. It also agreed to temporarily forego exercising its creditor rights and remedies. The City and the Authority agreed that ACA would be reimbursed for any payments it made and agreed that the bonds would still be repaid from rent payments, although the payment plan was extended over a longer period of time. Significantly, the Forbearance Agreement also makes clear that the obligation to make the rent payments is subject to annual appropriations by the City.

In January 2015, the City voted not to appropriate funds for the rent payments and has not made any payments since that time. As a result, the Authority once again failed to repay the bonds.

In response, ACA and the Bank filed a ten-count complaint in federal court against the City and the Authority. The City and the Authority filed a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted the motion to dismiss finding that all ten counts in the complaint failed to state claims for which relief could be granted. ACA and the Bank appealed all but one of the counts. We have jurisdiction for this appeal pursuant to 28 U.S.C. § 1291.

II.

This Court reviews a motion to dismiss de novo. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). In so doing, we follow the well-settled standard for considering a motion to dismiss under Rule 12(b)(6).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint. To sufficiently plead a claim, the Federal Rules of Civil Procedure

6

require that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). This pleading standard does not require detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard. *Id.*

To meet the Rule 8 standard and survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To contain sufficient factual matter to make a claim plausible, the factual content must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While we must accept the factual allegations in the complaint as true, we need not accept a complaint's legal conclusions. *Id.* Thus, simply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard. *Id.* The Supreme Court noted that while Rule 8 departed from the hypertechnical code-pleading requirement of a prior era, it did not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–679.

Using this standard, we review ACA and the Bank's claims on appeal.

III.

ACA and the Bank appeal nine of the ten counts that the district court dismissed. Five of the nine counts at issue on appeal are primarily based on the City's failure to make the rent payments because it did not appropriate the funds for such payments. These five counts all assert a breach of one of the financing documents. The remaining four counts are implied, declaratory and equitable in nature. We will address the five breach of contract counts and then the remaining implied, declaratory and equitable counts.

A.

First, ACA and the Bank argue the district court erred in dismissing their claim for breach of a third-party beneficiary contract. Although they are not parties to the Lease Agreement between the City and the Authority, ACA and the Bank claim they can bring an action under it because they are third-party beneficiaries to that Lease Agreement. They contend this count states a plausible claim for relief because the City has a legally enforceable obligation to pay rent under the Lease Agreement. ACA and the Bank claim that the City breached the Lease Agreement by not paying rent to the Bank.

This argument gets to the crux of the lawsuit—whether the City has an enforceable obligation to make rent payments. The language of the Lease Agreement is dispositive on this issue. Section 4.2 of the Lease Agreement states that the City shall pay the rent to the Bank on behalf of the Authority. This provision is subject to Section 4.5 which states:

8

Notwithstanding anything in this Lease Agreement to the contrary, the City's obligations to pay the cost of performing its obligations under this Lease Agreement and the Trust Agreement, including without limitation its obligation to pay all Basic Rent and Additional Rent, **shall be subject to and dependent upon appropriations being made from time to time by the City Council for such purpose** . . . .

J.A. 54. (emphasis added).

Consistently, Section 6.1(c) states:

Notwithstanding anything contained in this Section to the contrary, **failure by the City to make when due any payment required to be made under this Lease Agreement** or failure by the City to observe and perform any covenant, condition or agreement on its part to be observed or performed under this Lease Agreement **resulting from failure of the City to appropriate moneys for such purposes, as described in Section 4.5, shall not constitute an event of default.**

J.A. 61–62. (emphasis added).

This language unambiguously states that the City did not have an enforceable obligation to make the rent payments. Any obligation of the City to make rent payments was and is subject to the City appropriating the funds for such payments. In other words, if the City did not appropriate funds, which it did not, the City had no obligation to make the rent payments. A party cannot be sued for breaching an obligation it never had in the first place. To make this even more clear, the Lease Agreement provides that the City's failure to make rent payments when no appropriations are made does not constitute an event of default. Therefore, the claim that the City breached its obligation to the Authority under the Lease Agreement fails to state a claim for which relief can be granted.

9

The ACA and the Bank challenge the legal effect of the "subject to appropriation" language. In considering this challenge, the Virginia Supreme Court's decision in *Dykes v. Northern Virginia Transp. Dist. Comm'n*, 411 S.E.2d 1 (Va. 1991) is instructive. In that case, a county incurred a long-term debt obligation without holding a referendum on the debt. Concerned citizens alleged that the obligation violated Virginia's constitutional requirement that such obligations be approved by the citizens of the county. The court rejected the challenge because the county's obligation, like the obligation in this case, was subject to the county's appropriation of funds for that purpose. The court held that "subject to appropriation" financing does not create constitutional cognizable debt "because it does not impose any enforceable duty or liability on the County." *Id.* at 10. "[N]either the County nor its general revenues is liable for repayment of the debt incurred by the bond issue." *Id.*

ACA and the Bank argue that *Dykes* is distinguishable from this case because it involved a constitutional challenge to a municipal bond transaction brought by concerned citizens whereas this case is brought by parties to the financing arrangement. This distinction, however, is immaterial. The court in *Dykes* looked to the nature of the debt, not the nature of the parties, and found that "subject to appropriation" financing does not impose any enforceable duty or liability on the county. *Dykes* confirms the complaint fails to state a claim that the City breached its obligation to the Authority under the Lease Agreement for which ACA and the Bank can recover as third-party beneficiaries.

10

B.

ACA and the Bank next argue the district court erred in dismissing their claim that the Authority breached the Trust Agreement. In that count, ACA and the Bank claim the Authority has not made bond payments since 2014. To address this ground, we look to the language of the Trust Agreement. Under it, the Authority's obligation to make the bond payments was dependent on the City paying rent. For example, Section 1001(c) of the Trust Agreement states:

> The Authority covenants to faithfully observe and perform all of its covenants, conditions and agreements contained in this Trust Agreement and to promptly pay the principal of and premium, if any, and interest on the Bonds at the places, on the dates and in the manner specified in this Trust Agreement and the Bonds; **provided, however, that such obligations are limited obligations of the Authority, payable solely from the payments of Basic Rent and Additional Rent** and the property secured by the Deed of Trust.

J.A. 118. (emphasis added).

> Additionally, Section 1703 of the Trust Agreement states:

> Notwithstanding any provision of the Bonds or the Basic Agreements to the contrary, the obligations of the Authority under the Bonds and the Basic Agreements are not general obligations of the Authority, **but are limited obligations payable solely from payments of Basic Rent and Additional Rent** and the property pledged pursuant to the Deed of Trust.

J.A. 141. (emphasis added).

As the language quoted above makes clear, the Authority's promise to make the bond payments was and is subject to the City's payment of the rent. Aside from the rent payments from the City, the Authority had no independent contractual obligation to make the bond payments. Thus, we find that ACA and the Bank's claim for breach of the Trust

11

Agreement is not plausible because it is contradicted by the clear and unambiguous terms of the Trust Agreement. *See Foothill Capital Corp. v. E. Coast Bldg. Supply Corp.*, 259 B.R. 844, 845 (E.D. Va. 2001) (holding that where an agreement is plain and unambiguous, the court is not at liberty to rewrite the contractual language). [4]

C.

ACA and the Bank next claim the district court erred in dismissing their claims for breach of the City Deed of Trust and breach of the Authority Deed of Trust. They point to Section 1.2 of the Deeds of Trust, which states that the "Grantor shall perform and observe all duties, obligations, and requirements and shall comply in all respects with the terms, covenants, conditions, representations and warranties of the Bonds, this Deed of Trust, the Lease Agreement and the Trust Agreement." J.A. 176, 199. Specifically, they argue that by failing to make bond payments in the manner provided by the Trust

---

[4] ACA and the Bank raise an additional issue regarding this count by asserting that the Authority also breached the Trust Agreement by not paying revenues derived from the secured property. However, they did not make this argument before the district court. We have held that "[w]hen a party in a civil case fails to raise an argument in the lower court and instead raises it for the first time before us, we may reverse only if the newly raised argument establishes 'fundamental error' or a denial of fundamental justice." *In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014) (citing *Stewart v. Hall*, 770 F.2d 1267, 1271 (4th Cir. 1985)). We find neither fundamental error nor a denial of fundamental justice here. ACA and the Bank do not even allege in this count that the Authority failed to pay from the revenues of the property secured by the Deed of Trust. The complaint simply alleges that the Authority breached the Trust Agreement "in a number of material ways" and does not give any further specificity. These conclusory allegations fail to meet pleading requirements prescribed in *Twombly* and *Iqbal*. They also defeat any argument that dismissing ACA and the Bank's new and improperly late argument constitutes fundamental error or denial of fundamental justice.

12

Agreement, the City and the Authority breached their obligations under the Deeds of Trust.

While the Deeds of Trust require the City and the Authority to adhere to the Trust Agreement, they do not alter or modify the language in Sections 1001(c) and 1703 of the Trust Agreement discussed above. By the express terms of the Trust Agreement, the Authority's obligation to make bond payments is limited to the rent paid by the City. It makes clear that the City's obligation to make rent payments is subject to the City's decision to appropriate rent money. In the face of those clear contractual terms, the counts alleging violations of the Deeds of Trust fail to state a claim for which relief can be granted.

D.

ACA and the Bank next claim the district court erred in dismissing their count for breach of the Forbearance Agreement. They concede that the City's rent payment obligation under the Forbearance Agreement is subject to appropriations by the City. However, they contend that language does not waive the City's or the Authority's duty to make rent payments under the Forbearance Agreement. We disagree. Section 5.4 of the Forbearance Agreement provides:

> The obligations of the City to make adjusted Basic Rent payments pursuant to Paragraph 5.1 and deferred payments of Basic Rent pursuant to Paragraph 5.3 are **subject to annual appropriation by the City Council** of amounts sufficient to make such payments. The City agrees that it is the intention of the City to make annual appropriations in amounts sufficient to make the payments required under this Agreement.

J.A. 227. (emphasis added).

13

Like the language in the Trust Agreement and the Lease Agreement described above, this language is unambiguous. Accordingly, the claim for breach of the Forbearance Agreement fails to state a plausible claim.

ACA and the Bank also claim on appeal the district court erred in dismissing this count because the City and the Authority made misrepresentations which constituted a breach of the Forbearance Agreement. However, neither this count nor any part of the complaint contains any allegations about misrepresentations. Instead, the complaint alleges that ACA and the Bank "have been damaged as a result of Defendants' breaches of their contractual obligations contained in the Forbearance Agreement." J.A. 32. ACA and the Bank argue that making a misrepresentation constitutes a breach of the City and the Authority's obligations under the Forbearance Agreement. ACA and the Bank thus contend that they have satisfied their pleading requirements by alleging the City and the Authority breached their contractual obligations even though they have not specified the alleged misrepresentations. This position is in direct conflict with *Twombly* and *Iqbal*. Conclusory allegations, such as those pointed to by ACA and the Bank, do not contain sufficient facts to properly state a claim. The allegations do not specify what contractual obligation was breached. Neither do they refer to any underlying facts to support the purported breach. Thus, the complaint is not pled with enough specificity to plausibly state a claim for breach of the Forbearance Agreement.

E.

Having addressed the breach of contract counts, we turn to ACA and the Bank's count for breach of the implied covenant of good faith and fair dealing. ACA and the

14

Bank argue that, even if they have no claim for breach of an express term, they have stated a plausible claim for breach of the implied covenant of good faith and fair dealing. Specifically, ACA and the Bank argue that the "subject to appropriation" language is ambiguous and created discretion on the part of the City. They then claim the City acted arbitrarily and unfairly by failing to appropriate funds when the City could afford to appropriate the funds to repay the Golf Course debt. This argument fails for two reasons.

First, the complaint does not allege that the City acted arbitrarily and unfairly by failing to make appropriations when it could afford to appropriate. When a complaint fails to state a short and plain statement of the claim showing the pleader is entitled to relief, the claim fails. *See* Fed. R. Civ. Pro. 8(a)(2). That is precisely the situation here. Without factual allegations that support their legal conclusions, ACA and the Bank have failed to plead a plausible claim for relief.

Second, even if we put aside the deficiencies in the pleadings, the "subject to appropriation" language is not ambiguous. As stated above, ACA and the Bank are sophisticated commercial entities engaged in a multi-million dollar municipal finance transaction. They are to be bound by the plain and unambiguous terms of their contracts. *See Quadros & Assocs., P.C. v. City of Hampton*, 268 Va. 50, 54, 597 S.E.2d 90, 93 (2004) (holding that the terms of the parties' contract were plain and unambiguous and thus the parties were bound by them). Under Virginia law, the implied covenant of good faith and fair dealing "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997).

15

In essence, ACA and the Bank ask us to impose new terms to their deal that save them from the consequences of the express terms of their agreements. We decline to do so. We find that ACA and the Bank fail to state a claim that the City and the Authority breached the implied covenant of good faith and fair dealing.

F.

ACA and the Bank challenge the district court's dismissal of their declaratory judgment count. In that count, ACA and the Bank sought a declaration that the financing documents were legal and enforceable and provide ACA and the Bank with the right to possess and foreclose on the secured property. The district court dismissed this count on the basis that the request for declaratory judgment was not a proper standalone claim.

We first consider the request for a declaration that the financing documents were legal and enforceable. Despite its ruling that the declaratory judgment count was not a proper standalone claim, the district court proceeded to address the merits of this request in its consideration of the City Deed of Trust claim. The district court explained that the only document whose legality was at issue was the City Deed of Trust. The district court then evaluated that document and found it to be legally valid and enforceable. This finding was not appealed to this Court, thus there is no longer a dispute regarding its legality. Since the issue for which the declaration was sought is not in dispute, we decline to address this issue.

Turning now to the request for a declaration that ACA and the Bank could possess and foreclose the secured property, counsel for the City and the Authority conceded at oral argument that, subject to compliance with the terms of the documents, ACA and the

16

Bank have the right to foreclose the property secured by the Deeds of Trust. As there appears to be no dispute about whether ACA and the Bank have the right to pursue their creditor rights under the financing documents, we decline to address this issue as well.

G.

ACA and the Bank next argue that the district court erred in dismissing their count for restitution/unjust enrichment/*quantum meruit*. They argue that this count properly states a claim because the enforceability of the financing documents is in dispute. ACA and the Bank claim that if the City and the Authority are not forced to make bond payments under the financing documents, they can recover under equitable theories. In support of this argument, ACA and the Bank appear to assume that a finding that the City and the Authority were not required to make bond payments equates to a finding that the financing documents are unenforceable or void.

ACA and the Bank are mistaken. The district court did not find that the financing documents were unenforceable, nor do we. We, as did the district court, simply recognize that the express terms of the contract make repayment subject to appropriations by the City. Virginia law makes clear that "where there is an express and enforceable contract in existence which governs the rights of the parties, the law will not imply a contract in contravention thereof." *Royer v. Bd. Of Cty. Supervisors of Albemarle Cty.*, 10 S.E. 2d 876, 881 (Va. 1940). Thus, this count fails to state a claim.[5]

---

[5] Additionally, the district court found that ACA and the Bank pled this count "in the alternative" in the event that the court found the City Deed of Trust void. The district judge found that the City Deed of Trust was a valid document, and thus dismissed this (Continued)

17

H.

ACA and the Bank next argue that the district court erred in dismissing their count for constructive fraudulent inducement. They assert that the complaint states a plausible claim because they pled that they detrimentally relied on misrepresentations by the City and the Authority concerning the validity of the financing documents. We find this count should be dismissed because it was inadequately pled. In the complaint, ACA and the Bank do not identify any specific misrepresentations of the Authority. Therefore, under *Iqbal* and *Twombly*, any claim of misrepresentation by the Authority fails to assert facts which could plausibly provide relief.[6]

IV.

Having addressed the challenges to the district court's dismissal of the complaint, we now turn to the challenge to the district court's rulings on ACA and the Bank's requests to amend. ACA and the Bank did not file a motion to amend. However, they requested leave to amend five times in their response in opposition to the City and the Authority's motion to dismiss. Three requests are mentioned in the body of their response and two in the footnotes. The district court addressed one of these requests, denying it on

_____

count. While the complaint did not state that this count was pled in the alternative, counsel for ACA and the Bank made representations at oral argument that the count was pled in the alternative. Therefore, we find no error in the district court's determination.

[6] The district court dismissed this claim because it found that, like the restitution/unjust enrichment/*quantum meruit* claim, ACA and the Bank pled it in the alternative. As stated in the preceding footnote, we find no error in this determination.

18

the basis that it was not a proper motion. The district court does not appear to have ruled on the other requests. ACA and the Bank argue that the district court erred by summarily denying one of their requests to amend and ignoring their other requests to amend.

Generally, courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A motion to amend should only be denied when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (internal quotation marks omitted). However, a district court does not abuse its discretion by declining to grant a request to amend when it is not properly made as a motion. *See Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) (affirming denial of leave to amend when the plaintiffs' request for leave was in a footnote of their response to a motion to dismiss and in their final sentence of their objection to the recommendation of the magistrate judge).

ACA and the Bank concede that this Court has held that a district court does not abuse its discretion by denying contingent requests to amend in the legal memoranda made in lieu of a motion to amend. They argue, however, that this Court should follow other circuits which, according to their interpretation, find that requests made in opposition memoranda constitute a proper motion to amend. We decline to do so.

Even if we did find that ACA and the Bank's "requests" to amend constituted a motion to amend, the district court did not abuse its discretion by denying it. A review of the record indicates that although they informally requested several times to amend, ACA and the Bank never indicated what amendments they were seeking. They never identified

19

any facts they sought to include in an amendment. They never identified any cause of action they sought to add in an amendment. Without that information, there was no way for a district court to evaluate whether the proposed amendments were futile or not. Thus, to the extent their requests for leave are considered motions to amend, and to the extent they were denied, we affirm the district court.

## V.

As the district court correctly concluded, the complaint fails to allege claims for which relief could be granted. For all the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

20