**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2005**

K12 INSIGHT, LLC,

        Plaintiff - Appellant,

    v.

JOHNSTON COUNTY BOARD OF EDUCATION,

        Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:17-cv-01397-CMH-JFA)

Argued: October 30, 2019                    Decided: January 14, 2020

Before WILKINSON, MOTZ, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Sean Maxwell Roberts, AEGIS LAW GROUP LLP, Washington, D.C., for Appellant. Deborah R. Stagner, THARRINGTON SMITH, LLP, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Lindsay Vance Smith, THARRINGTON SMITH, LLP, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this appeal, we review an order of the United States District Court for the Eastern District of Virginia dismissing a complaint that arose from a software subscription contract dispute between North Carolina's Johnston County Board of Education (the "Board") and K12 Insight, LLC ("K12"). After the first year of the contract, the Board decided not to appropriate the money for the remaining two years of the contract and wrote to K12 informing it that the Board was cancelling the contract. K12 then filed a complaint against the Board for breach of contract. Holding that the Board had no legal obligation to continue making payments under the contract's terms, we affirm the district court's dismissal of the Complaint.

I.

In May 2014, the Board entered into a contract with K12, subscribing to K12's "Let's Talk!" software platform. In late July 2016, before the existing contract between the parties expired, Dr. Renfrow, the Board's superintendent, signed an order form (the "Order Form") renewing the Board's subscription for a fee of $86,650 per year for three one-year terms commencing on August 1, 2016 with the final term ending on July 31, 2019.

On August 1, 2016, a few days after both parties had signed the Order Form, the Board unilaterally issued a purchase order (the "Purchase Order"). The Purchase Order included a certificate on its face, signed by the Board's Chief Financial Officer, Arthur Stanley, stating that "[t]his instrument has been preaudited in the manner required by the

2

School Budget and Fiscal Control Act." J.A. 108. On August 11, 2016, the Board paid K12 for the software subscription for the 2016–2017 school year.

Things proceeded without issue for the 2016–2017 school year. But, due to state and local funding shortfalls, the Board was forced to "trim costs" for the 2017–2018 school year. J.A. 56. The funding shortfalls had three sources. First, although the Board submitted a proposed current expense budget of $64,633,439 to the Johnston County Board of Commissioners (the "Commissioners") in June 2017, the Commissioners ultimately appropriated only $60,104,953. Second, the Board faced a funding gap for students with disabilities, because Johnston County had more students with disabilities than the State of North Carolina had accounted to it for funding purposes. Third, though the Board had committed to providing an annual one percent increase for local teacher supplements, the Commissioners did not appropriate the necessary funding, so the Board had to cover the increase for the 2017–2018 school year (which totaled approximately $2 million) through the allocation of other local funds.

Because of these funding shortfalls, the Board sent a letter to K12 on June 21, 2017, informing K12 that "funds have not been appropriated and will not be appropriated for the continued execution of this agreement." J.A. 106. In this letter, the Board purported to cancel the contract under Clause 14.3 (the "Subject-to-Appropriations Clause") that, in relevant part, reads: "This Agreement is contingent upon the continued availability of appropriations and is subject to cancellation, without penalty, either in whole or in part, if funds are not appropriated by the Client or otherwise not made available to the Client."

3

J.A. 90. Attached to the Board's letter was a letter from Mr. Stanley confirming that funds were not available for the "continuing execution of the contract." J.A. 105.

II.

On October 23, 2017, K12 filed suit in the Circuit Court of Fairfax County, Virginia, asserting claims for breach of contract and constructive fraud. On December 7, 2017, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, the Board removed the case to the United States District Court for the Eastern District of Virginia.

On May 23, 2018, the Board moved for summary judgment on both of K12's claims. K12 consented to the dismissal of the constructive fraud claim.

On July 31, 2018, the district court granted summary judgment to the Board on the breach of contract claim. *See K12 Insight LLC v. Johnston Cty. Bd. of Educ.*, No. 1:17-CV-1397, 2018 WL 3638087 (E.D. Va. July 31, 2018). In doing so, the district court gave three reasons why K12's breach of contract claim lacked merit.

First, the district court held that, because the Order Form did not have a pre-audit certification form affixed to its face, it was therefore invalid pursuant to N.C. Gen. Stat. § 115C-441(a1). *Id.* at *1–2. The district court held that the fact that a Purchase Order, unilaterally issued by the Board days after the execution of the Order Form, had a pre-audit certification did not satisfy the statute. *Id.* at *2.

Second, the district court held that the Board was not bound by the contract because Dr. Renfrow, the Board's superintendent, did not have the authority to enter into the contract. *Id*. Under the Board's Policy, all contracts made on behalf of the Board involving

4

expenditures of $90,000 or more must have prior approval from the Board. *Id*. Because this contract involved a $259,950 total expenditure, and because the superintendent did not submit the Order Form to the Board for approval, the superintendent's action was *ultra vires* and the Order Form was unenforceable. *Id.*

Third, the district court held that even if the contract was enforceable, the Board nevertheless properly terminated the subscription "under the express terms of the contract." *See K12 Insight LLC*, 2018 WL 3638087 at \*2. The district court reasoned that, because funds were not appropriated for the remaining two years of the subscription, the Board was entitled to terminate the contract under the Subject-to-Appropriations Clause. *Id.*

K12 timely appealed the district court's order granting summary judgment.

III.

On appeal, this Court reviews orders granting summary judgment de novo, "'applying the same legal standards as the district court,' and 'viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party.'" *T-Mobile Ne. LLC v. City Council of Newport News*, 674 F.3d 380, 384–85 (4th Cir. 2012) (quoting *Pueschel v. Peters*, 577 F.3d 558, 563 (4th Cir.2009)). To be entitled to summary judgment, a party must demonstrate that there is "no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Board argues, among other things, that it was entitled to terminate its contract with K12 under the Subject-to-Appropriations Clause. For the following reasons, we agree

and therefore hold that the Board was not ultimately liable for the remaining two years of the contract.[1]

The Order Form incorporated K12's Terms of Service by reference. Clause 14.3 of the Terms of Service contains the Subject-to-Appropriations Clause, which states, in relevant part, that the contract is "contingent upon the continued availability of appropriations and is subject to cancellation, without penalty, either in whole or in part, *if funds are not appropriated by the Client* or otherwise not made available to the Client." J.A. 90, 113 (emphasis added).

Here, in 2017, after making budget and funding decisions, the Board wrote to K12 informing it that "funds have not been appropriated and will not be appropriated for the continued execution of this agreement" and sought to terminate the contract under the Subject-to-Appropriations Clause. J.A. 106.

We recently addressed the issue of subject-to-appropriation clauses pursuant to Virginia state law (the applicable state law here)[2] in *ACA Financial Guaranty Corp. v. City*

---

[1] We recognize that the district court discussed two other bases as to why K12's breach of contract claim should be dismissed, namely: the Order Form did not satisfy North Carolina's pre-audit certification requirements, *see* N.C. Gen. Stat. § 115C-441(a1), and Dr. Renfrow did not have actual or apparent authority to enter the contract with K12. *See K12 Insight LLC*, 2018 WL 3638087, at *1–2. Given that this Court affirms the decision of the district court based on the Subject-to-Appropriations Clause, we need not address the other grounds.

[2] Clause 15.1 of the Terms of Service states that the "agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, without regard to its own or other conflict of law principles." J.A. 90. A federal court sitting in diversity applies the forum state's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Virginia is the forum state. In Virginia, such choice-of-law clauses are "prima facie valid and should be enforced, unless the party challenging

6

*of Buena Vista*, 917 F.3d 206, 210 (4th Cir. 2019). There, the contract at issue had a similarly worded subject-to-appropriations clause, stating that Buena Vista's obligation to pay rent on a golf course "shall be subject to and dependent upon appropriations being made from time to time by the City Council for such purpose" and that a failure to pay "resulting from the failure of the City to appropriate moneys for such purposes . . . shall not constitute an event of default." *Id.* at 212–13. For several years, Buena Vista paid rent for the golf course; however, one year, it voted against appropriating any funds for any further rent payments. *Id.* at 211. On appeal, the question before this Court was whether the "City's obligation to make rent payments is legally enforceable when the obligation is expressly subject to the City's annual decision to appropriate funds." *Id*. at 210. Applying Virginia state law, we stated that, under the clause there, the "City never made an absolute commitment to make the rent payments" and that the "City's obligation was subject to its decision to appropriate funds each year." *Id.* More specifically, this Court held that that the subject-to-appropriations clause:

> [U]nambiguously states that the City did not have an enforceable obligation to make the rent payments. Any obligation of the City to make rent payments was and is subject to the City appropriating the funds for such payments. In other words, if the City did not appropriate funds, which it did not, the City had no obligation to make the rent payments. A party cannot be sued for breaching an obligation it never had in the first place.

*Id.* at 213.

---

enforcement establishes that such provisions are unfair or unreasonable, or are affected by fraud or unequal bargaining power." *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 397 S.E.2d 804, 807 (Va. 1990). In this case, neither the Board nor K12 have claimed that the choice-of-law provision is somehow unfair or affected by fraud. As a result, the choice-of-law clause is valid.

*ACA Financial*'s reasoning applies with equal force here. If funds were not appropriated by the Board or otherwise not made available to the Board, then there was no "enforceable obligation" for the remaining years of the software subscription. *ACA Financial*, 917 F.3d at 213.

K12 attempts valiantly, however, to argue that a genuine issue of fact exists as to whether money was appropriated by the Board for the contract. This is so, K12 argues, because for the 2017–2018 financial year, the Board increased its budget from the previous school year for the "Contracted Services" category, under which the contract fell. However, as K12 concedes in its brief, and as the uncontroverted evidence before the district court made clear, the Board budgets and appropriates funds to categories—not specific contracts. Thus, as the Board argues, within that lump sum in its budget, it must make allocation decisions, so "[j]ust because the funding allocation to a single line item increased in a given year does not mean funds were available for a specific contract under that line item." Appellee Br. at 36–37. In any event, there is a difference between money being "available" to, and money being "appropriated" by, the Board. And the uncontroverted evidence before the district court showed that the Board, facing budget shortfalls and the need to trim costs, ultimately decided to not appropriate funds to the K12 contract, as evidenced by the Board's termination letter to K12 stating that it had determined that the funds "will not be appropriated for the continued execution of this agreement." J.A. 106.

Therefore, the record plainly evidences that the Board ultimately decided not to appropriate its funds to the contract with K12 for the second and third year of the contract,

8

as it was authorized to do under the clear and unambiguous terms of the contract. As a result, the Board had no legally enforceable obligation to make payments for the second and third years of the contract with K12.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

9