**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1300

HARITHA NADENDLA, M.D.,

Plaintiff - Appellant,

v.

WAKEMED, d/b/a WakeMed Cary Hospital,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Malcolm J. Howard, Senior District Judge.  (5:18-cv-00540-H)

Argued:  October 27, 2021                      Decided:  January 21, 2022

Before RICHARDSON and QUATTLEBAUM, Circuit Judges, and Michael F. URBANSKI, Chief United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed in part and reversed in part by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Richardson and Judge Urbanski joined.

**ARGUED:** John Richard Taylor, ZAYTOUN BALLEW & TAYLOR, PLLC, Raleigh, North Carolina, for Appellant.  Elizabeth Sims Hedrick, FOX ROTHSCHILD LLP, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Matthew D. Ballew, Robert E. Zaytoun, ZAYTOUN BALLEW & TAYLOR PLLC, Raleigh, North Carolina, for Appellant.  Matthew N. Leerberg, FOX ROTHSCHILD LLP, Raleigh, North Carolina, for Appellee.

QUATTLEBAUM, Circuit Judge:

After WakeMed Cary Hospital denied her physician privileges, Haritha Nadendla sued the hospital alleging a federal claim under 42 U.S.C. § 1981 and state-law claims of breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and arbitrary and capricious conduct. WakeMed moved to dismiss those claims under Federal Rule of Civil Procedure 12(b)(6). The district court initially ruled that Nadendla pled sufficient facts to plausibly state a § 1981 claim and state-law claims for breach of contract and for arbitrary and capricious conduct. But it granted WakeMed's motion as to Nadendla's state-law claims for negligence and breach of the implied covenant of good faith and fair dealing. However, the court reversed course in a subsequent order, concluding that, had it applied the correct law, it would have dismissed Nadendla's § 1981 claim. The district court then dismissed the § 1981 claim and declined to exercise supplemental jurisdiction over Nadendla's remaining state-law claims for breach of contract and for arbitrary and capricious conduct.

In this appeal, Nadendla challenges the district court's dismissal of her § 1981 claim. She argues the district court erred in revisiting its initial decision and in dismissing the claim. She asserts the district court also erred in dismissing her state-law claims for negligence and breach of the implied covenant of good faith and fair dealing.

We conclude that the district court had discretion to revisit its prior order and did not abuse its discretion in doing so. Further, we find no error in the court's dismissal of Nadendla's § 1981 and negligence claims. But we reverse the district court's dismissal of

2

Nadendla's claim for breach of the implied covenant of good faith and fair dealing and remand with instructions.

I.

Nadendla is a licensed physician who is board certified in the medical fields of obstetrics and gynecology.[1] She is of Indian origin. Nadendla was a member of the medical staff at WakeMed's hospital where she held clinical privileges. When WakeMed first granted Nadendla clinical privileges in 2010, it did so in accordance with its Medical Staff Bylaws, which formed a contract between Nadendla and WakeMed.

On May 31, 2017, citing "clinical concerns," WakeMed informed Nadendla that she would not be reappointed clinical privileges and her privileges and appointment on the medical staff would expire at the end of the following month. J.A. 13. Nadendla requested a hearing, pursuant to the Bylaws, to contest WakeMed's decision.

WakeMed's actions during the hearing process, according to Nadendla, "exhibited an abject lack of fairness" and deprived her of adequate process in contravention of the Bylaws. J.A. 13. She presented "clear evidence contradicting each of the allegations of 'clinical concerns'" raised by WakeMed. J.A. 13. For example, she provided independent experts and her colleagues at the hospital as witnesses, who testified that her actions met

---

[1] These facts are as Nadendla alleges in her complaint. While they may or may not be true, we accept them as true since this is an appeal of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 608–09 (4th Cir. 2020).

the appropriate standard of care. But WakeMed did not present a witness at the hearing who had actual knowledge of events related to Nadendla's care of patients. Nor did WakeMed produce anyone who had reviewed the medical records relating to the alleged patient-care events that were the basis for the alleged clinical concerns. WakeMed did not interview any of the patients or providers involved in the events it claims justified denying Nadendla privileges. Nor did it seek independent expert review of Nadendla's actions as it had done before in other cases. Instead, WakeMed relied on a three-page summary of patient case reports prepared by another physician at the hospital who was not even called to testify at the hearing.

Nadendla also alleges the physicians WakeMed did involve in the hearing were either unqualified to weigh in on her reappointment or were biased. One physician was a general surgeon with no experience in obstetrics or gynecology medicine and who had admitted to medical negligence in a prior civil action. Two other physicians were direct competitors of Nadendla's. They were actively engaged in a business dispute with her and would have benefited from the suspension of her clinical privileges.

At the end of the hearing process, WakeMed confirmed its prior decision, denying Nadendla's appeal for reinstatement of clinical privileges.

II.

Nadendla sued WakeMed in the United States District Court for the Eastern District of North Carolina, seeking relief from WakeMed's decision to deny her clinical privileges. J.A. 1. Nadendla asserted five claims for relief: (1) breach of contract, (2) breach of the

4

implied covenant of good faith and fair dealing, (3) race discrimination in violation of § 1981, (4) arbitrary and capricious conduct and (5) negligence. WakeMed moved to dismiss each claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.[2] The district court granted WakeMed's motion as to Nadendla's claims for negligence and breach of the implied covenant of good faith and fair dealing. The district court dismissed Nadendla's negligence claim because she "alleged no duty other than those already captured in the claims for breach of contract and arbitrary and capricious conduct." J.A. 243. It dismissed her claim for breach of the implied covenant of good faith and fair dealing on its understanding that North Carolina does not allow for a plaintiff to bring claims for breach of contract and breach of the implied covenant of good faith and fair dealing under the same facts. But the district court denied WakeMed's motion as to Nadendla's § 1981, breach of contract and arbitrary and capricious conduct claims.

Later, WakeMed moved for the district court to reconsider its order based on the Supreme Court's decision in *Comcast Corp. v. National Ass'n of African American-Owned Media*, 140 S. Ct. 1009 (2020). After it reconsidered its order, the district court dismissed Nadendla's § 1981 claim for failure to state a claim upon which relief may be granted because Nadendla had not pled but-for causation as required by *Comcast*. It then declined to exercise supplemental jurisdiction over Nadendla's state-law claims for breach of

---

[2] WakeMed also moved for dismissal under Rule 12(b)(1), but that issue is not before us to decide.

5

contract and arbitrary and capricious conduct and dismissed them without prejudice.[3] Nadendla timely filed her notice of appeal, and we have jurisdiction to review under 28 U.S.C. § 1291.

III.

We begin with the district court's decision to revisit its prior ruling on Nadendla's § 1981 claim. The district court possesses broad discretion to revisit a prior ruling, and we review such a decision for an abuse of discretion. *See Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).

Nadendla's main quarrel with the district court's decision to revisit its prior order is that it did so only after WakeMed moved the court to reconsider the § 1981 claim under a different causation standard than it did in its first order. To be sure, allowing litigants a "second bite at the apple" via a motion to reconsider is disfavored. *See Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.*, 33 F.3d 390, 395 (4th Cir. 1994). But "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515–16 (4th Cir. 2003) (holding that "the district court abused its discretion in denying the [motion for reconsideration]"). A district court has discretion to revise an order "that adjudicates fewer than all the claims" in an action "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Moses H. Cone Mem'l*

---

[3] Nadendla is not appealing the district court's dismissal, without prejudice, of her claims for breach of contract and arbitrary and capricious conduct.

6

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"); *Carlson*, 856 F.3d at 325 (noting Rule 54(b)'s approach to interlocutory orders "involves broader flexibility to revise" the orders "as litigation develops and new facts or arguments come to light").

After the district court issued its first order, WakeMed moved the court to reconsider the order in light of the Supreme Court's recent *Comcast* decision. WakeMed argued that under *Comcast*, a plaintiff asserting a § 1981 claim must plausibly plead but-for causation to survive dismissal. In its revised order, the district court stated that it had not considered *Comcast*, "which was decided after the motion to dismiss was fully briefed, but prior to this court's first order on the motion." J.A. 413–14. After acknowledging that it "[could not] simply ignore precedent because it was unaware of such precedent," J.A. 414, the district court held that Nadendla had failed to plead but-for causation in alleging her § 1981 claim.

We find no abuse of discretion in the district court's decision to revisit its prior order. The district court realized that it had not applied the right legal standard in deciding whether Nadendla had pled a § 1981 claim and corrected itself. Our law affords a court discretion to do just that. Consider the implications of an alternative result. If a court recognized it made a mistake in the law, should it simply let the mistake stand? Of course not. And the fact that the district here did so after a motion to reconsider, rather than *sua sponte*, does not change the result.

7

IV.

A.

We now turn to Nadendla's challenges to the district court's dismissal of her claim under § 1981 and claims for negligence and breach of the implied covenant of good faith and fair dealing. We review a district court's grant of a motion to dismiss de novo. *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019) (citing *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

Before addressing the merits of Nadendla's arguments, we discuss the applicable pleading standards as they bear heavily on our decision. "A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp.*, 917 F.3d at 211. The Federal Rules of Civil Procedure require that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard." *ACA Fin. Guar. Corp.*, 917 F.3d at 211.

To meet the Rule 8 standard and "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To contain sufficient factual matter to make a claim plausible, the factual

8

content must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

B.

With these standards in mind, we begin with Nadendla's § 1981 claim. Congress passed § 1981 to "guarantee[] to all persons in the United States 'the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1017 (4th Cir. 1999) (quoting 42 U.S.C. § 1981(a)). Section 1981 defines "make and enforce contracts" as including the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." § 1981(b). To succeed on a § 1981 claim, "a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006). A plaintiff must also show that the interference with a contractual interest would not have happened but for the plaintiff's race. *Comcast*, 140 S. Ct. at 1019. Thus, to survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to those legal requirements.

Nadendla's complaint fails to do this. It contains extensive and specific allegations regarding WakeMed's failure to abide by the Bylaws during the hearing process. But factual details regarding race are conspicuously absent. Nadendla only generally alleges that "WakeMed similarly forced out one or more other physicians of Indian origin and removed their clinical privileges unjustifiably." J.A. 24. She also alleges that WakeMed

9

"treated [her] differently than Caucasian physicians similarly situated." J.A. 25. Moreover, "a double standard of medical peer review exists at [WakeMed's] hospital whereby minority physicians are scrutinized more harshly by [WakeMed] than are Caucasian physicians." J.A. 26. And Nadendla alleges that the reasons offered by WakeMed for the denial of her privileges and its refusal to abide by the process as laid out in the Bylaws were pretextual.

However, Nadendla provides no details about any of these conclusory allegations. For example, she does not give any facts to suggest that WakeMed's treatment of other physicians of Indian descent was unjustified. She does not provide any details about how the peer review process for physicians of Indian descent was different from the process for white physicians either. She does not even describe how she was treated differently than the similarly situated white physicians.

Nadendla responds that *Woods v. City of Greensboro*, 855 F.3d 639 (4th Cir. 2017), supports her position that she has pled sufficient factual allegations to survive a 12(b)(6) motion. There, a minority-owned business sued a city, asserting a claim for race discrimination under § 1981 arising out of a city's denial of an economic-developmental loan. *Id*. at 641–42. But in *Woods*, the minority-owned business pled the following:

> (1) the results of a disparity study demonstrating a pattern of the City almost exclusively lending to nonminority-owned businesses; (2) facts which suggest that the [business-owners'] residence had sufficient equity to fully secure a third-position lien; and (3) examples of how the City has treated nonminority businesses differently, *including taking a third-position lien in approving a loan to a nonminority corporation*[, which the City had refused to do for the minority-owned business in *Woods*.]

10

*Id.* at 648. We determined that such facts created a plausible inference of discrimination because they suggested that the city treated nonminority businesses different from minority businesses, and the only plausible explanation was race.

But Nadendla's allegations fall far short of the plaintiffs' allegations in *Woods*. Nadendla premises her § 1981 claim on only vague and conclusory allegations that WakeMed denied other physicians of Indian descent clinical privileges before or had a different peer review process for white physicians. Without factual detail, we are unable to infer that WakeMed intended to interfere with a contractual interest of Nadendla on the basis of race. Instead, we are left with just the sort of "labels, conclusions, recitations of a claims' elements and naked assertions devoid of further factual enhancement," *ACA Fin. Guar. Corp.*, 917 F.3d at 211, that the Supreme Court (and our Court) have held will not suffice to meet the Rule 8 standard, *Iqbal*, 556 U.S. at 678; *see also Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 394 (4th Cir. 2021) (affirming dismissal of a § 1981 complaint because it alleged only facts supporting "that [the plaintiff] was treated differently, not that she was treated differently *because of* her race").

Nadendla finally insists that she has sufficiently pled a claim for racial discrimination because she pled that "[b]ut for Plaintiff's race, [WakeMed]'s wrongful conduct [that] Plaintiff alleged herein would not have occurred." J.A. 25. She argues further that she also pled that she "suffered numerous harms and damages 'as a direct and proximate result' of the racial discrimination of [WakeMed]." J.A. 31. But as with her allegations about discrimination, her allegations about causation fall short. Instead, she alleges mere recitals of the elements of a cause of action, which, without specific facts

11

supporting those elements, do not state a plausible claim for relief. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Nadendla's allegations seem to be precisely the type that *Iqbal* and *Twombly* tell us are insufficient. Because her allegations do not provide sufficient detail to create a plausible inference that WakeMed's actions were because of Nadendla's race, she has failed to plausibly state a claim under § 1981. Accordingly, we affirm the district court's dismissal of Nadendla's § 1981 claim.

C.

Last, we consider whether the district court erred in dismissing two of Nadendla's state-law claims in its first order. We first consider her claim for negligence and then proceed to her claim for breach of the implied covenant of good faith and fair dealing.

1.

North Carolina recognizes a cause of action for negligence.[4] Moreover, "hospitals . . . owe a duty of care to patients." *Blanton v. Moses H. Cone Mem'l Hosp., Inc.*, 354 S.E.2d 455, 457 (N.C. 1987); *see also Muse v. Charter Hosp. of Winston-Salem, Inc.*, 452 S.E.2d 589, 594 (N.C. Ct. App. 1995); *Bost v. Riley* 262 S.E.2d 391, 396 (N.C. Ct. App. 1980). But we have not found, nor has Nadendla cited, a single North Carolina case recognizing a duty of care that hospitals owe physicians. As for Nadendla's assertion that

---

[4] "To state a claim for common law negligence, a plaintiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." *Fussell v. N.C. Farm Bureau Mut. Ins. Co., Inc.*, 695 S.E.2d 437, 440 (N.C. 2010) (citation omitted).

12

a tort duty may arise out of a breach of contract, North Carolina law makes clear that something more than mere breach is required. *See Firemen's Mut. Ins. Co. v. High Point Sprinkler Co.*, 146 S.E.2d 53, 60 (N.C. 1966) ("A breach of contract, nothing else appearing, does not give rise to an action in tort."). Nadendla does not allege what that something more is that would give WakeMed a duty of care. Thus, the district court did not err in dismissing Nadendla's negligence claim because she failed to allege facts suggesting that WakeMed owed her any duty except contractual duties arising out of the Bylaws.

2.

North Carolina also recognizes a cause of action for a breach of the implied covenant of good faith and fair dealing. *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, 781 S.E.2d 889, 894 (N.C. Ct. App. 2016) ("In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement."). The district court dismissed that claim, reasoning that North Carolina law does not allow claims for breach of contract and breach of the implied covenant of good faith and fair dealing based on the same facts. In fairness, there is North Carolina law that suggests this conclusion. *See Cordaro v. Harrington Bank, FSB*, 817 S.E.2d 247, 256 (N.C. Ct. App. 2018) ("As a general proposition, where a party's claim for breach of the implied covenant of good faith and fair dealing is based upon the

13

same acts as its claim for breach of contract, we treat the former claim as 'part and parcel' of the latter.").

But *Cordaro* is distinguishable from the case before us. There, a borrower in a real estate loan transaction brought claims against the lender for breach of contract and breach of the implied covenant of good faith and fair dealing. Both claims centered on the inaccuracy of the appraisal which the lender required to be supplied. The borrower argued that the lender owed the borrower a duty to ensure that the appraisal was accurate. But the North Carolina Court of Appeals affirmed the trial court's dismissal of the breach-of-contract claim because express provisions of the contract contradicted the duty the borrower alleged was owed. *Id*. at 255–56. The court also affirmed the dismissal of the claim for a breach of the implied covenant of good faith and fair dealing, reasoning that "[t]he invalidity of [the borrower's] breach of contract claim on these facts is likewise fatal to his claim for breach of the implied covenant of good faith and fair dealing." *Id.* at 256. That makes sense. If a claim for breach of contract is precluded by express contractual provisions, a plaintiff should not be able to avoid those provisions by alleging the exact same conduct breached the implied covenant of good faith and fair dealing. Here, the district court did not determine that the express terms of any contract precluded Nadendla's breach of contract claim. In fact, it held Nadendla adequately pled a breach of contract claim. We do not interpret North Carolina law to mean that a claim for breach of the implied covenant of good faith and fair dealing is foreclosed where the implied duty is not contrary to an express provision of the contract.

14

What's more, a claim for a breach of the implied covenant of good faith and fair dealing is separate from a claim for breach of contract. *See Richardson v. Bank of Am., N.A.*, 643 S.E.2d 410, 426 (N.C. Ct. App. 2007) (providing that the North Carolina Court of Appeals has not held "that a party must allege a breach of contract to state a claim for breach of the duty of good faith and fair dealing"); *Governors Club, Inc. v. Governors Club Ltd. P'ship*, 567 S.E.2d 781, 788–89 (N.C. Ct. App. 2002) (treating claims for breach of contract and breach of the implied covenant of good faith and fair dealing as separate claims and holding plaintiff pled sufficient facts to survive a motion to dismiss on both).

While North Carolina law is not crystal clear on the question before us,[5] considering the law cited by both parties, we find that Nadendla's breach of the implied covenant of good faith and fair dealing claim does not fail as a matter of law. Breach of the implied covenant of good faith and fair dealing is a separate claim from breach of contract, and it is not subsumed into the latter when the express terms of the contract do not preclude the implied terms which the plaintiff claims were breached. Thus, we reverse the district court's dismissal of that claim.[6]

---

[5] In fact, the district court's decision is generally consistent with several other district court decisions. *See BioSignia, Inc. v. Life Line Screening of Am., Ltd.*, No. 1:12CV1129, 2014 WL 2968139, at *5 (M.D.N.C. July 1, 2014); *Devlin v. Wells Fargo Bank, N.A.*, Civil No. 1:12-CV-000388-MR-DLH, 2014 WL 1155415, at *10 (W.D.N.C. Mar. 21, 2014), *aff'd*, 585 Fed. App'x 171 (4th Cir. 2014); *Lord of Shalford v. Shelley's Jewelry, Inc.*, 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000).

[6] Our decision should not, however, be construed as permitting a plaintiff to obtain double recovery. In other words, a plaintiff who asserts a breach of contract claim and a breach of implied covenant of good faith and fair dealing claim based on the same facts cannot recover twice. But where, as here, the claims have been plausibly plead, the double recovery issue need not be addressed at the Rule 12(b)(6) stage of the proceeding.

V.

For the reasons outlined above, we affirm the district court's dismissal of Nadendla's § 1981 and negligence claims. We reverse the district court's dismissal of her claim for breach of the implied covenant of good faith and fair dealing. We remand this action to the district court to decide, in its discretion, whether to exercise supplemental jurisdiction over Nadendla's claim for breach of the implied covenant of good faith and fair dealing, or decline jurisdiction and dismiss that claim without prejudice.

*AFFIRMED IN PART AND REVERSED IN PART*