**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-2094**

JANET PERDUE,

Plaintiff - Appellant,

v.

SANOFI-AVENTIS U.S., LLC,

Defendant - Appellee.

------------------------------

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Amicus Supporting Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, Chief District Judge.  (1:18-cv-00221-MR-WCM)

Argued:  January 29, 2021                    Decided:  June 8, 2021

Before AGEE, RICHARDSON, and RUSHING, Circuit Judges.

Affirmed by published opinion.  Judge Richardson wrote the opinion, in which Judge Agee and Judge Rushing joined.

**ARGUED:**  L. Michelle Gessner, GESSNERLAW, PLLC, Charlotte, North Carolina, for Appellant.  Theresa Sprain, WOMBLE BOND DICKINSON (US) LLP, Raleigh, North

Carolina, for Appellee. Julie Loraine Gantz, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Jonathon D. Townsend, WOMBLE BOND DICKINSON (US) LLP, Raleigh, North Carolina, for Appellee. Sharon Fast Gustafson, General Counsel, Jennifer S. Goldstein, Associate General Counsel, Elizabeth E. Theran, Assistant General Counsel, Office of General Counsel, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.

RICHARDSON, Circuit Judge:

We must decide whether "job sharing" a single full-time position with a willing partner qualifies as a reasonable accommodation that an employer must provide under the Americans with Disabilities Act ("ADA"). It does not. If the job share in question did not *exist* at the time it was proposed as an accommodation, the ADA does not require the employer to create the new position to accommodate a disabled employee.

At Sanofi-Aventis U.S., LLC, a part-time job-share position does not exist unless and until the Area Business Leader approves an employee's proposal. Such a proposal thus asks Sanofi to *create* a new part-time position. And that is an accommodation the ADA does not mandate. So the plaintiff's claims cannot succeed.

## I.      Background

### A.      Perdue's tenure at Sanofi

Janet Perdue was hired as a pharmaceutical sales representative at Sanofi in 2001. In that role, she called an average of eight physicians a day and attended medical education programs, which often happened at night or over the weekend. Sales representatives like Perdue spent 50% or more of their time traveling.

Perdue first worked in Anderson, South Carolina, but she later transferred to an open position in Greenville where she lived. She appears to have performed well, even winning Sanofi's platinum sales award in 2017.

In 2013, Perdue was diagnosed with antisynthetase, an autoimmune disease, and had surgery to remove a benign brain tumor that had impacted her ability to walk and see out one eye. Sanofi gave her leave for ten months to recover. At the end of 2013, Perdue

3

returned to work in the Spartanburg territory with a job-share partner. The job share allowed Perdue to split the workload of a normal position with another employee, subject to manager approval. Her job-share partner later resigned, and Perdue began working part time (60% capacity). She eventually returned to work full-time in the Greenville territory.

In 2017, Perdue was reassigned to North Carolina's Asheville territory during a company reorganization. This reassignment increased her travel time from two to three hours per day to four hours per day. After the reorganization, the Greenville Area Business Leader told Perdue that a cardiovascular sales representative position might soon open up in Greenville. Perdue believed that her background selling diabetes medication left her unqualified for that job. And she also believed that the job "didn't seem like a good fit," given that she was just starting in the Asheville territory and was "kind of excited" about the new area. J.A. 80–81.

Within six weeks of starting in the Asheville territory, Perdue noticed problems with joint pain and stiffness related to her autoimmune disorder. So the Asheville Area Business Leader raised Perdue's health concerns to the Regional Business Leader, requesting that Perdue be considered for a job share or an open position "within the geography where she lives." J.A. 241.

Perdue's doctor soon determined that Perdue was "medically unable to work, effective immediately" for at least three weeks. J.A. 218. Sanofi approved her request for FMLA leave and short-term disability benefits. At the end of the three weeks, her doctor "advised another month off work," explaining that "[s]he should not expect to be able [to] return to full time work if travelling. Could possibly retry full time if local in Greenville

4

but may need to cut hours if local too." J.A. 271–72. Eventually, the doctor imposed permanent medical limitations that prevented Perdue from traveling more than 20 miles from Greenville and restricted her from working more than 30 hours a week. Sanofi was told of these limitations.

During this time, Perdue considered applying for a flexible-work arrangement. Sanofi's flexible-work policy permitted telework, flexible hours, part-time work, and job sharing (two employees each handling 50% of a standard position) with manager approval. J.A. 128–38; *see also* J.A. 130 ("Managers will approve or deny a request for Flexible Work Arrangements based on business conditions and the employee's satisfactory performance."). Under that policy, flexible-work arrangements were "not an entitlement," J.A. 137, but were "available for discussion between employees and their managers," J.A. 128. The policy expressly noted that "[n]ot all positions may be suitable [for a flexible-work arrangement] due to the type of work being performed, business needs, or performance concerns." *Id.* And the Regional Business Leader explained that although Perdue job shared previously in Spartanburg, Sanofi had not approved of "too many" job shares, as they "add[] a nuance that we had to carefully work out between the representative and the manager." J.A. 146; *see also* J.A. 150 (explaining that a job share will not "necessarily" be approved).

Perdue decided to pursue a job-sharing arrangement. She approached Caitlyn Hunt, a sales representative in Greenville to ask if Hunt would be her job-share partner. Hunt eventually agreed. She too appears to have been well regarded within the company, having received a gold sales award and an "exceeds expectations" end-of-year rating in 2016.

5

So Perdue and Hunt submitted their proposal to job share Hunt's primary-care diabetes representative position in Greenville. They needed the approval of the Greenville Area Business Leader, so they met with her to pitch their proposal. During that meeting, the Leader asked about Perdue's health and Perdue explained the situation. The Leader said that she had concerns about Hunt's competence and attention to detail. As an example, she explained that Hunt had submitted an expense report incorrectly when she had first started working in the Greenville territory that January. And the Business Leader also told Perdue and Hunt that their 2016 end-of-year reviews were not relevant because they were completed by another Area Business Leader.

In early May, Sanofi's human-resources department suggested other accommodations. Sanofi offered "a hotel stay in order to better break up [Perdue's] days and limit her travel." J.A. 243. But Perdue said that "wouldn't help." J.A. 243. Sanofi also asked if Perdue had a comfortable car. But Perdue explained that she liked her Equinox and it was comfortable. Perdue testified at her deposition that her doctor said that hotel stays and a new car would not help her symptoms. J.A. 108. Sanofi also suggested that Perdue check for job openings listed on the company's internal portal.

The next day Sanofi—through the Greenville Area Business Leader—denied Perdue and Hunt's request to create the job share, explaining that "the business would not support a job share arrangement" at that time. J.A. 321. The Greenville Area Business Leader added that "at this point in time with all the changes happening at Sanofi, this would not be a good business decision." J.A. 103–04. The Leader stated in her deposition that she was concerned about Hunt being "a good fit at that time for a job share." J.A. 200.

6

She noted that Hunt "had just started reporting to [her], and [she] had concerns about her attention to detail and her meeting metrics." *Id*. These concerns, she explained, were magnified by the "tense environment within the company" after the recent restructuring and layoffs. The Regional Business Leader approved the decision to deny the job share for similar reasons.

After the job share was denied, Perdue continued on short-term disability leave. With her short-term disability benefits running out and no sign that her medical restrictions would be abated, Perdue spoke with human resources about her next steps. This led her to apply for long-term disability. Soon after, she was fired, as Sanofi could not provide her "with an indefinite leave of absence" and there were "no other accommodations that would enable [her] to perform the essential functions of [her] job." J.A. 48.

## B. The proceedings below

After she was fired, Perdue sued Sanofi in federal district court alleging violations of the ADA , 42 U.S.C. § 12101 *et seq.*, and wrongful discharge under North Carolina law. Sanofi moved for summary judgment on all claims, and Perdue moved for partial summary judgment. The district court granted Sanofi's motion and denied Perdue's. *See Perdue v. Sanofi-Aventis U.S. LLC*, No. 1:18-cv-00221-MR, 2019 WL 4874815, at *16 (W.D.N.C. Oct. 2, 2019). Perdue timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

## II. Discussion

We review a district court's grant of summary judgment de novo, "applying the same standard that the district court was required to apply." *Calloway v. Lokey*, 948 F.3d 194, 201 (4th Cir. 2020). Granting summary judgment is appropriate when "the movant

7

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must construe the evidence in the light most favorable to the non-moving party, but we may not "weigh the evidence or make credibility determinations." *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019).[1]

On appeal, Perdue mainly challenges the district court's disposition of her ADA failure-to-accommodate claim. The ADA generally prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability" 42 U.S.C. § 12112(a). One form of discrimination is failing to make "reasonable accommodations" for a disabled employee's "known physical or mental limitations," unless the employer "can demonstrate that the accommodation would impose an undue hardship" on its business. *Id.* § 12112(b)(5)(A).

To show an employer's failure to accommodate, the plaintiff must prove: (1) that she had a disability within the statutory meaning; (2) that the employer knew of her disability; (3) that a reasonable accommodation would permit her to perform the essential

---

[1] Perdue argues at the outset that the district court improperly applied the summary-judgment standard by using the language "forecast of evidence" to discuss Perdue's burden to survive summary judgment. But we find no error in the district court's use of that terminology. "The summary judgment inquiry . . . scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of h[er] claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). That inquiry necessarily requires the district court to consider a "forecast of evidence" that the parties intend to present at trial to determine whether it raises any "genuine dispute[s]" of "material fact." Fed. R. Civ. P. 56(a). And if Perdue's contention is instead that the district court improperly required her to show that she *would* win at trial, rather than that she *could* win at trial, that argument is not supported by the opinion's language or analysis.

8

functions of the position; and (4) that the employer refused to make the accommodation. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). But even if the plaintiff makes this showing, the employer can still defeat the failure-to-accommodate claim by demonstrating that the reasonable accommodations would impose an undue hardship. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 395 (2002) (quoting § 12112(b)(5)(A)). This appeal focuses on the plaintiff's third element: whether Perdue identified a "reasonable accommodation" that would enable her to perform her job.[2]

A "reasonable accommodation" includes a "[m]odification[] or adjustment[] to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). The ADA includes a non-exhaustive list of accommodation examples: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of

---

[2] Perdue argues on appeal that the district court erred in finding that Sanofi denied the job share for a "legitimate business reason" when the evidence showed those reasons were "pretextual." Appellant Br. 2. But the district court's analysis of those aspects of the *McDonnell-Douglas* burden-shifting approach was irrelevant to the legal claim Perdue brought. Her failure-to-accommodate claim requires no evidence of discriminatory intent. So *McDonnell-Douglas*—addressing legitimate business reasons and pretext to infer discriminatory intent—does not apply here. The failure to provide a "reasonable accommodation" that would not impose an "undue hardship" is itself the discriminatory act prohibited by the ADA. *See Punt v. Kelly Servs.*, 862 F.3d 1040, 1049 (10th Cir. 2017) ("The *McDonnell Douglas* test is inapposite in a failure-to-accommodate case" because a failure-to-accommodate case does not require proof of the employer's motives.); *Lenker v. Methodist Hosp.*, 210 F.3d 792, 799 (7th Cir. 2002) (describing *McDonnell-Douglas*'s burden shifting as "both unnecessary and inappropriate" in a failure-to-accommodate case).

examinations, training materials or policies, the provision of qualified readers or interpreters, [or] other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B); *see also* 29 C.F.R. § 1630.2(o)(2)(ii). To carry her burden on summary judgment, Perdue need only "present evidence from which a jury may infer that the [identified] accommodation is 'reasonable on its face, *i.e.*, ordinarily or in the run of cases.'" *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012) (quoting *Barnett*, 535 U.S. at 401–02).

The only accommodation Perdue argues Sanofi had a duty to provide is the job share of Hunt's position in the Greenville territory.[3] Accepting her job-share proposal, she argues, would have been a "reassignment to a vacant position," which is an accommodation required by statute and regulation. *See* 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii).

But the proposed job share is not an accommodation required by the ADA. That conclusion lies at the intersection of two limiting principles. First, the ADA only requires "reassignment to a *vacant* position" as an accommodation for an employee with a disability. 42 U.S.C. § 12111(9)(B) (emphasis added); *see also* 29 C.F.R. § 1630.2(o)(2)(ii); *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 355 (4th Cir. 2001) ("The

---

[3] Sanofi argues that Perdue's claim is barred because she rejected other "reasonable accommodations" that Sanofi offered. And it is true that rejecting another reasonable accommodation would defeat her reasonable-accommodation claim. *See Elledge v. Lowe's Home Ctrs., LLC*, 979 F.3d 1004, 1013–14 (4th Cir. 2020); *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008). But since we otherwise affirm the district court's grant of summary judgment to Sanofi, we need not decide whether the hotel stays, a new car, or the potential position in Greenville's cardiovascular business unit were reasonable accommodations.

ADA does not require reassignment when it would mandate that the employer bump another employee out of a particular position."). And second, the position must already exist because "the ADA does not require that an employer create a new position for a disabled employee." *Laird v. Fairfax Cnty.*, 978 F.3d 887, 892 n.3 (4th Cir. 2020); *see also Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1174 (10th Cir. 1999) (collecting cases).[4] So to prevail on her reasonable-accommodation claim, Perdue must show that the job-share position she sought was both vacant and existing. This she cannot do.

The district court focused on whether the job-share position was "vacant." *See Duvall v. Ga.-Pac. Consumer Prods., L.P.*, 607 F.3d 1255, 1262 (10th Cir. 2010) ("In the employment context, . . . a position is 'vacant' with respect to a disabled employee for the purposes of the ADA if it would be available for a similarly-situated non-disabled employee to apply for and obtain."). But this inquiry skips over the logically preceding question of whether the position existed. For a position cannot be vacant unless it already exists. And here, under Sanofi's undisputed policies, no job-share position existed unless and until the Area Business Leader approved Perdue's proposal to create the position.

Sanofi employees, with and without disabilities, may apply to create a job-share position. But when Perdue sought the job-share position, it did not exist. One full-time

---

[4] Moving an employee to part-time work may be a reasonable accommodation in some circumstances. *See* 42 U.S.C. § 12111(9)(B). But it may be required only when "the employer has part-time jobs readily available," *i.e.*, when a new position need not be created. *See Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir. 1998); *Treanor v. MCI Telecomms. Corp.*, 200 F.3d 570, 575 (8th Cir. 2000).

11

position in the Greenville territory, not two part-time positions, existed. Hunt's willingness to job share with Perdue does not mean that a new job-share position came into existence. The uncontradicted evidence established, even if construed in the light most favorable to Perdue, that splitting Hunt's existing position into two required Sanofi's agreement. And that agreement is something the ADA does not demand. *Laird*, 978 F.3d at 892 n.3; *see also Terrell*, 132 F.3d at 626–27 ("Whether a company will staff itself with part-time workers, full-time workers, or a mix of both is a core management policy with which the ADA was not intended to interfere."); *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 950 (8th Cir. 1999) (requiring a company to create a permanent co-manager position was not a reasonable accommodation).

Perdue argues that because Sanofi once permitted her to job share as she worked her way back from her initial diagnosis and brain surgery, it could have done so in Greenville. But this prior decision does not require Sanofi to do the same thing when Perdue proposed the new job-share position with Hunt. We applaud Sanofi for going beyond its legal obligation under the ADA in accommodating Perdue's recovery. And Sanofi appears willing to consider flexible-employment situations. But its generosity and overall flexibility does not raise the legal standard. *See Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995) (An employer that "bends over backwards to accommodate a disabled worker . . . must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation."); *see also Myers v. Hose*, 50 F.3d 278, 284 (4th Cir. 1995) ("Discouraging discretionary

12

accommodations would undermine Congress' stated purpose of eradicating discrimination against disabled persons.").

The parties dispute how *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002), applies to Sanofi's policy that a job share will be permitted only if the Area Business Leader approves. *Barnett* addressed whether reassignment to a vacant position was reasonable in the ordinary run of cases when that reassignment would trump the company's established neutral seniority system. *Id.* at 393–94. The Court said that it was not, unless the plaintiff "present[ed] evidence of special circumstances that make 'reasonable' a seniority rule exception in the particular case." *Id.* at 394. We recently extended *Barnett*'s reasoning to hold that reassignment in violation of a company's "best-qualified" hiring policy is not reasonable in the ordinary run of cases. *Elledge*, 979 F.3d at 1016.

But *Barnett* and its Fourth Circuit progeny do not apply here. Those cases discuss the superiority of company policies that determine how to fill vacant *existing* positions over ADA accommodations. Sanofi's policy instead dictates when a new position can be created. The ADA can, in "special circumstances," influence how a company fills its positions, even if that requires overriding otherwise neutral company policies. *Barnett*, 535 U.S. at 397. But it cannot require the company to create new positions.

So providing Perdue a job-share position with Hunt in the Greenville territory was not a reasonable accommodation required by the ADA—not because the position was not "vacant" but because the position she sought did not exist. The ADA does not require employers to create new positions to accommodate their employees with disabilities. It is

13

on this ground that summary judgment should have been granted to Sanofi on Perdue's ADA failure-to-accommodate claim.

Perdue separately argues that Sanofi should be liable for failing to engage with her in an interactive process. But "the interactive process 'is not an end in itself'" but a "means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought." *Wilson*, 717 F.3d at 347 (quoting *Rehling v. City of Chi.*, 207 F.3d 1009, 1015 (7th Cir. 2000)). So "an employer will not be liable for failure to engage in the interactive process if the employee ultimately fails to demonstrate the existence of a reasonable accommodation that would allow her to perform the essential functions of the position." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 581 (4th Cir. 2015). As Perdue fails to demonstrate the existence of a reasonable accommodation, Sanofi cannot separately be liable for failing to engage in the interactive process.

\*                \*                \*

We hold today that a part-time job-share position that requires managerial approval to create is not a reasonable accommodation in the ordinary run of cases because the ADA does not require companies to create new positions to accommodate their employees with disabilities. With that conclusion, the rest of Perdue's claims cannot succeed.[5] Accordingly, the district court's grant of summary judgment to Sanofi is

---

[5] Perdue also seeks to revive her state-law wrongful-discharge claim on appeal. But her arguments fail for the same reasons her ADA arguments fail. *See* N.C. Gen. Stat. § 143-422.2(a); *N.C. Dep't of Corr. v. Gibson*, 301 S.E.2d 78, 82 (N.C. 1983) (To (Continued)

14

AFFIRMED.

---

determine the content of a state-law wrongful-discharge claim, North Carolina courts "look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases.").

And we reject Perdue's argument that the district court failed to separately consider her cross-motion for partial summary judgment. Granting summary judgment to Sanofi, which required construing all facts and factual inferences in Perdue's favor, necessarily meant that Perdue's cross-motion for partial summary judgment could not prevail. *See Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). The district court's opinion said as much. *See Perdue*, 2019 WL 4874815, at *16 ("The Court having determined that the Defendant's Motion for Summary Judgment should be granted, for the same reasons the Plaintiff's motion is denied.").

15