**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-6313**

───────────────

DANIEL W. PHOENIX, a/k/a Daniel W. Jamison,

        Plaintiff – Appellant,

    v.

MARK AMONETTE, Virginia Department of Corrections Chief Medical Director;
PAUL OHAI, Doctor, Dillwyn Correctional Center,

        Defendants – Appellees,

    and

CHADWICK DOTSON, Director of Virginia Department of Corrections;
NATARCHA GREGG, MSA, RD, State wide Dietitian for VADOC; DANA
RATLIFFE, Warden, Dillwyn Correctional Center; MR. JONES, Asst. Warden
Dillwyn Correctional Center; C. MORGAN, RNCB, Health Authority, Dillwyn
Correctional Center; J. D. OATS, Chief of Housing and Programs, Dillwyn
Correctional Center; MRS. HOUSE, Nurse, Dillwyn Correctional Center; T.
TOWNES, Director of Food Service, Dillwyn Correctional Center; M.E.
MORGAN, Asst. Director of food services, Dillwyn Correctional Center; C.
POWELL, Food Services Supervisor, Dillwyn Correctional Center; L. MASON,
Institutional Ombudsman, Dillwyn Correctional Center; D. CALL, Warden,
Nottaway Correctional Center; K. SCHLOBOHM, Asst. Warden, Nottaway
Correctional Center; D. LEWIS, Institutional Ombudsman, Nottaway Correctional
Center; DR. LEON DIXON, Doctor, Nottaway Correctional Center; DR. YOUNG,
Doctor, Nottaway Correctional Center; P. MCCABE, RNCA Health Authority,
Nottaway Correctional Center; NURSE FORD, Nurse, Nottaway Correctional
Center; MR. ALLEN, Food Service Director, Nottaway Correctional Center,

        Defendants.

───────────────

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Thomas T. Cullen, District Judge. (7:18-cv-00504-TTC-JCH)

---

Argued:  January 25, 2024                                    Decided:  March 18, 2024

---

Before WILKINSON, GREGORY, and HEYTENS, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Heytens wrote the opinion, in which Judge Gregory joined and Judge Wilkinson joined as to Parts I, II, and III(A). Judge Wilkinson wrote an opinion concurring in part and dissenting in part.

---

**ARGUED:** Libby Andrea Baird, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellant. Rosalie Fessier, TIMBERLAKESMITH, Staunton, Virginia, for Appellees. **ON BRIEF:** Clayton P. Phillips, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellant. Laura H. Cahill, Martin J. Minot, Stacie A. Sessoms, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee Mark Amonette. Brittany E. Shipley, TIMBERLAKESMITH, Staunton, Virginia, for Appellee Paul Ohai.

---

2

TOBY HEYTENS, Circuit Judge:

An incarcerated person who has celiac disease sued a doctor for depriving him of a gluten free diet. The district court granted summary judgment to the doctor because the plaintiff did not have an expert witness who could testify about the standard treatment for celiac disease or the causal link between the doctor's conduct and the plaintiff's asserted harm. We hold no expert testimony was needed to avoid summary judgment here. We thus vacate the district court's judgment and remand for further proceedings.

I.

Daniel Phoenix is an inmate in the Virginia prison system. In 2018, he sued a slew of state officials for failing to treat his celiac disease. Only two of Phoenix's claims remain at issue: an Eighth Amendment claim for deliberate indifference against Dr. Paul Ohai and a related claim seeking injunctive relief against Dr. Mark Amonette, the Chief Medical Director of the Virginia Department of Corrections.

A.

The relevant allegations stem from Phoenix's time at Dillwyn Correctional Facility.[1] Ohai worked as a "contract physician" at Dillwyn while Phoenix was there. JA 223. It is undisputed that Ohai saw Phoenix several times after Phoenix complained of "abdominal" and "gastric symptoms." *Id.* What Ohai knew about Phoenix's condition, and how he treated Phoenix, however, are much disputed. Because the case comes to us via an appeal from a decision granting Ohai's motion for summary judgment, we recount the facts

---

[1] It appears Phoenix is now confined at St. Brides Correctional Center.

3

in the light most favorable to Phoenix. See *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 958 (4th Cir. 2021).

When he first saw Phoenix, Ohai noted Phoenix's "medical history of celiac disease." JA 223. Celiac disease is an allergy to gluten.  "When a person with celiac disease eats" gluten, their immune system "attacks the cells that line the small intestine." JA 182. "Over time, this reaction damages the small intestine and makes the small intestine unable to absorb nutrients from food." *Id.* Ohai's "assessment" during that first meeting "was that" Phoenix "was suffering from an exacerbation of celiac disease." JA 224.

Having concluded Phoenix's symptoms were celiac related, Ohai "advised" him "to avoid gluten items from the commissary as much as possible" and notified the "dietary service" about Phoenix's "gluten sensitivity." JA 224. Although Phoenix's "diet order" from that period said he was allergic to gluten, Ohai says the Virginia Department of Corrections "does not have a specific gluten free diet." JA 172, 224.

Over the next month, Phoenix saw Ohai several times. During one visit—after Phoenix reported "sharp abdominal pain" and that he had been "vomiting blood"—Ohai sent Phoenix to the emergency room for evaluation. JA 225. Phoenix returned from the hospital with discharge instructions that included information about celiac disease and a handwritten note stating: "strict gluten free diet." JA 201. Beneath the handwritten note is an illegible signature followed by the letters "M.D." *Id.* Although Ohai's signature does not appear on that page, he signed and dated several pages of the discharge instructions, including the page right before the one with the "strict gluten free diet" note.

Less than a week after Phoenix returned from the emergency room, however, Ohai

4

"discontinued" Phoenix's "special diet order." JA 226. Ohai had heard reports that Phoenix was "ordering foods containing gluten from the commissary." *Id.* Ohai says that fact, along with his other interactions with Phoenix, led him to "question[]" his "own prior assumption" that Phoenix's symptoms were "secondary to celiac disease." *Id.*

Phoenix continued to complain about gastric symptoms and his diet. At the end of July 2018—the same month Ohai discontinued Phoenix's special diet order—another physician at Dillwyn ordered a battery of tests for Phoenix, including one for celiac. Days later, that test came back positive for celiac disease. Although Ohai never signed the form containing the test results, he signed another lab report ordered the same day as Phoenix's positive celiac test.

Even after the positive test, Ohai refused to reinstate Phoenix's special diet order, declining such requests in August and September 2018. In September 2018, a nurse entered a new "offender diet order" for Phoenix stating that he was allergic to "wheat, eggs, [and] poultry." JA 173. But that order was seemingly initiated by someone other than Ohai, who insists he continued to refuse Phoenix's requests for a special diet throughout that month.

B.

In October 2018, Phoenix filed this lawsuit, initially proceeding pro se. Many of Phoenix's claims did not survive preliminary motions practice, and all defendants except Ohai and Amonette soon exited the litigation.

The district court at first denied summary judgment to Ohai and Amonette on Phoenix's Eighth Amendment claim. The court concluded Phoenix had created a genuine dispute of material fact about whether Ohai violated the Constitution by displaying

5

deliberate indifference to Phoenix's serious medical needs. The court retained Amonette as a defendant "solely for purposes of" granting injunctive relief if Phoenix prevailed on his claims against Ohai. JA 296.

Phoenix later secured counsel, and the case was set for mediation. Around the same time, the case was transferred to a different district court judge. After mediation failed, the new judge set a date for a jury trial.

Before trial, however, Phoenix missed the deadline for disclosing his expert witnesses as required by Federal Rule of Civil Procedure 26(a)(2). Ohai then filed two motions—one to exclude Phoenix's experts and a renewed motion for summary judgment.

The district court ruled on Ohai's two motions together. The court first excluded Phoenix's experts because Phoenix did not timely submit expert reports. Phoenix does not challenge that ruling on appeal, so we take that issue as settled.

The district court then granted summary judgment to Ohai and Amonette. Before addressing the merits of that motion, the court acknowledged it had denied a summary judgment motion by the same defendants. But the court determined it could revisit its previous ruling because Ohai's second motion "raise[d] an issue—the lack of experts— that could not have been raised at the time of the first summary judgment motion." JA 462– 63. The court granted summary judgment to Ohai, concluding Phoenix could not prove his claim without an expert to testify about the "threshold standard of care or on the presence of an injury caused by" Ohai. JA 467. The court granted summary judgment to Amonette because Phoenix's inability to prove that Ohai violated his constitutional rights meant there was "no basis on which to award injunctive relief" against Amonette. JA 469.

6

II.

Phoenix's first challenge to the district court's decision is that the court committed procedural error by reconsidering its earlier denial of summary judgment to the same two defendants. Reviewing that decision for an abuse of discretion, see *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017), we see none here.

Federal Rule of Civil Procedure 54(b) says "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of" final judgment. Despite that sweeping language, this Court has stressed that the "discretion" afforded by Rule 54(b) "is not limitless." *Carlson*, 856 F.3d at 325. Instead, a district court may revisit a previous interlocutory ruling only in "circumstances in which it may depart from the law of the case." *Id.*

We start by rejecting Ohai's argument that these limits do not apply when a district court is deciding whether to revisit a previous denial of summary judgment. Such orders are a textbook example of an interlocutory order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." Fed. R. Civ. P. 54(b); see *Hicks v. Ferreyra*, 965 F.3d 302, 308 (4th Cir. 2020) ("[D]enials of summary judgment are interlocutory orders[.]"). It is thus unsurprising that other courts have applied the usual Rule 54(b) standards to decisions reconsidering denials of summary judgment. See 11 Moore's Fed. Prac. § 56.124[1] (3d ed. 2023) (citing cases). And although this Court does not appear to have considered this precise question, we have said that the general Rule 54(b) standard applies when a district court is asked to revisit a decision denying a motion to dismiss for failure to state a claim. See *Nadendla v. WakeMed*,

7

24 F.4th 299, 303–04 (4th Cir. 2022). We see no reason to think a different standard should apply here. We thus hold that a district court's discretion to revisit an order denying summary judgment is "cabined" by the same principles that govern other types of interlocutory orders. *Carlson*, 856 F.3d at 325.

The district court acknowledged that the principles announced in *Carlson* constrained its discretion here. The court concluded, however, that considering Ohai's second summary judgment motion was appropriate because its exclusion of Phoenix's proposed experts meant the evidentiary landscape had shifted since its prior ruling. We see no abuse of discretion in that conclusion.

This Court has described the most relevant exception to the law of the case doctrine as covering situations where later developments produce "different evidence" than was anticipated. *Carlson*, 856 F.3d at 325. True, that is not quite the situation we have here, where evidence was excluded because of a failure to timely disclose expert reports. But a basic aim of Rule 54(b) is to give district courts "flexibility to revise" their rulings "as the litigation develops and new facts or arguments come to light." *Id.* Treating the exclusion of anticipated evidence as categorically different from a failure to predict what the evidence will ultimately show would conflict with that approach.

In addition, permitting district courts to revisit a previous denial of summary judgment after key evidence is excluded does not trigger the concerns that animate the limits on a court's ability to revise their previous interlocutory orders. The basis for the district court's decision to revisit the summary judgment question—that its exclusion of Phoenix's experts left him unable to meet his burden of proof—did not give Ohai "a second

8

bite at the apple" to make arguments he should have made in his first motion for summary judgment. *Nadendla*, 24 F.4th at 304 (quotation marks removed). Instead, the court considered an evidentiary development that would have been premature had Ohai raised it as a basis for summary judgment in his first motion. As the district court pointed out, when Ohai filed his first summary judgment motion, "the deadline for identifying experts had not yet been set, let alone passed." JA 463. Perhaps, as Phoenix argues, Ohai could have raised the need for an expert witness when he filed his first motion for summary judgment. But had Ohai raised the issue then, one can easily imagine Phoenix arguing Ohai had jumped the gun. See Fed. R. Civ. P. 56(d) (district court can "defer considering" a summary judgment motion, or allow the nonmovant more time to obtain evidence, when facts are not yet available).[2]

To the extent even greater caution is warranted when revisiting a ruling issued by a different district court judge, we conclude the district court's handling of Ohai's second summary judgment motion displayed the required sensitivity. See *United States Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (noting that a district court should be "hesitant to overrule the earlier determination" of a different district court judge). Before the district court, Phoenix only vaguely gestured at why

---

[2] This case arrives in an odd procedural posture, including a denial of a summary judgment motion before the close of discovery, a transfer to a different district court judge, a second motion for summary judgment, and a grant of that motion. In the future, this unusual posture could perhaps be avoided by waiting until discovery closes to rule on summary judgment motions. Of course, there will be situations when this does not make sense or is not the most efficient approach. But, in many cases, use of the Rule 56(d) mechanism will be helpful in streamlining litigation.

9

revising the court's previous ruling could be inappropriate, and he did so without citing Rule 54(b) or the standards governing such a decision. Even so, the district court asked the parties to address the reconsideration issue at a hearing, and then offered a thoughtful analysis in its opinion. For that reason as well, we see no abuse of discretion here.

III.

Having decided the district court did not exceed the bounds of its discretion in revisiting its denial of Ohai's first summary judgment motion, we turn to the merits of the ruling before us. "As always, we review the district court's summary judgment ruling de novo, applying the same legal standards as that court." *Harriman v. Associated Indus. Ins.*, 91 F.4th 724, 728 (4th Cir. 2024).

A.

At times, Ohai's defense of the district court's decision comes close to suggesting that expert testimony is needed in *every* Eighth Amendment claim involving deliberate indifference to a serious medical need. We do not read the district court as having adopted that view. And we firmly reject it.

This Court has never applied any special type of proof requirement to Eighth Amendment claims. In *Scinto v. Stansberry*, 841 F.3d 219 (4th Cir. 2016), for example, the Court held no expert was needed to prove a deliberate indifference claim where the "jury [was] capable of understanding, unaided, the risks of failing to provide insulin to a diabetic." *Id.* at 230. So too in *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990), which noted that, "[e]ven aside from" the expert witness testimony in the record, there was other evidence to support the deliberate indifference claims. *Id.* at 853. The Court explained that

10

a treating physician "could be found" to be deliberately indifferent based on evidence of a "[f]ailure to provide the level of care" the physician "believe[d]" to be "necessary"—evidence that can be presented to a jury without the aid of an expert. *Id.*

Requiring experts for all Eighth Amendment deliberate indifference claims would also contradict the Supreme Court's repeated rejection of special procedural rules based on the type of claim at issue. Under the Federal Rules of Civil Procedure, "[t]here is one form of action—the civil action." Fed. R. Civ. P. 2. Just as Rule 8(a)(2) does not require a litigant to cite any special type of evidence in support of its "short and plain statement of the claim showing that [it] is entitled to relief," Rule 56(a) does not require any specific type of evidence to generate a "genuine dispute as to any material fact." See, *e.g.*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–102 (2003) (rejecting argument that Title VII plaintiffs need "direct" evidence of discrimination to prevail in "mixed-motive" cases). Indeed, the Supreme Court has "consistently declined . . . invitations to revise" the Federal Rules of Civil Procedure by judicial fiat, even when faced with "perceived problem[s]" created by "suits by inmates." *Crawford-El v. Britton*, 523 U.S. 574, 595–96 (1998).

To sum up: There is no per se rule that expert testimony is necessary to establish an Eighth Amendment deliberate indifference claim. Instead, the question is whether, in the context of a particular case, the plaintiff has produced sufficient evidence—of whatever kind—to create a genuine dispute of material fact about each of the required elements.

## B.

We turn now to the necessarily case-specific inquiry of whether Phoenix needed an expert to avoid summary judgment here. We hold the answer is no. Because Phoenix did

11

not need an expert witness to defeat Ohai and Amonette's motion for summary judgment, we vacate the district court's judgment and remand for further proceedings.

The Eighth Amendment forbids "cruel and unusual punishments." U.S. Const. amend. VIII. "A prison official's deliberate indifference to an inmate's serious medical needs" violates that provision. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

A successful medical deliberate indifference claim has "two components, objective and subjective." *Jackson*, 775 F.3d at 178. The objective component requires that the plaintiff's "medical condition . . . be serious—one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotation marks removed). The subjective component requires showing that the defendant "had actual subjective knowledge of both the [plaintiff's] serious medical condition and the excessive risk posed by the official's action or inaction." *Id.*

Phoenix has created a genuine dispute of material fact about the objective prong. The record abounds with evidence that Phoenix has celiac disease, and that the disease requires treatment. As for the former, Ohai concedes that Phoenix had a "positive celiac test." Ohai Br. 27. And both Ohai's instruction to Phoenix to "avoid gluten items . . . as much as possible" (JA 224) and the discharge instructions from Phoenix's visit to the emergency room underscore the dangers posed by celiac disease and the need to avoid foods that will aggravate it.

Phoenix likewise did not need an expert witness to create a genuine dispute of material fact about the subjective prong. To meet his burden on that point, Phoenix needed

12

to produce sufficient evidence for a reasonable jury to find that Ohai "knew of and disregarded an excessive risk to" Phoenix's "health or safety." *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021). That standard is high. "Disagreements between an inmate and a physician over the inmate's proper medical care" do not cut it, *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985), and evidence that might show "medical malpractice" is not necessarily sufficient. *Jackson*, 775 F.3d at 178. Instead, "[o]nce prison officials are aware of a serious medical need, they need only to respond reasonably to the risk." *Hixson*, 1 F.4th at 302 (quotation marks and brackets removed).

True, determining whether medical professionals responded reasonably to a particular risk can involve an examination of the relevant standard of care. If, for example, an incarcerated person sues a doctor because they think the doctor chose the wrong course of treatment in a particular situation, showing the right course of treatment will be a necessary step in proving the doctor failed to respond reasonably. As a practical matter, that often may require testimony from a physician because lay jurors may "not be in a position to determine that the particular treatment or diagnosis fell below a professional standard of care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 536 (3d Cir. 2017).

But the fact that expert testimony may be necessary in some cases does not mean it was in this one. Even without an expert, Phoenix produced evidence from which a reasonable jury could conclude Ohai "knew of" Phoenix's celiac disease and "disregarded" the excessive risk it posed to his "health or safety" by failing to "respond[] reasonably." *Hixson*, 1 F.4th at 302 (quotation marks removed).

First, a rational jury could conclude Ohai knew Phoenix had celiac disease. During

their initial meeting, Phoenix told Ohai about his history with celiac disease and Ohai credited that information by concluding Phoenix's symptoms were "an exacerbation of celiac disease." JA 223–24. Phoenix also can point to the handwritten note on his emergency room discharge papers instructing him to follow a "strict gluten free diet" (JA 201) and the presence of Ohai's signature on different pages of the same form. What is more, Phoenix tested positive for celiac disease while he was in custody at the facility where Ohai worked, and Ohai signed reports from labs taken the same day as the positive celiac test. That combination of direct and circumstantial evidence would permit a reasonable jury to find that Ohai knew Phoenix had celiac disease. See *Scinto*, 841 F.3d at 226 ("A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge[.]").

Second, even without an expert, Phoenix marshalled evidence from which a reasonable jury could conclude that Ohai disregarded the risk posed by his celiac disease by failing to respond reasonably. Ohai's own declaration is useful for Phoenix here. As already mentioned, during the period when Ohai admits having believed Phoenix had celiac disease, Ohai told the prison's "dietary service" about Phoenix's "gluten sensitivity" and instructed Phoenix to "avoid gluten." JA 224. Phoenix can thus use Ohai's own words and actions to show that Ohai believed the appropriate treatment for celiac disease was a gluten free diet. The discharge information from Phoenix's trip to the emergency room—which says a gluten free "diet must become a way of life" for people with celiac disease—provides more evidence about the appropriate treatment for the disease. JA 203.

14

Despite the evidence establishing his belief about the proper response to celiac disease, Ohai admits he "discontinued" Phoenix's "special diet order" and refused to reinstate it even after Phoenix tested positive for celiac disease. JA 226. Even without an expert, a reasonable jury could conclude that Ohai's "[f]ailure to provide the level of care" he "himself believe[d] is necessary" for celiac disease amounted to a failure to "respond[ ] reasonably" to a serious medical need of which he was subjectively aware. *Miltier*, 896 F.2d at 853 (first two quotes); *Hixson*, 1 F.4th at 302 (third quote) (brackets in original).

Finally, we disagree with the district court's conclusion that an expert was needed for Phoenix to prove "the presence of an injury caused by Dr. Ohai." JA 467. That analysis conflates Phoenix's ability to succeed on the merits of his claim (and thus avoid summary judgment) with his ability to prove all the damages he might seek. This Court has been clear that "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a substantial risk of serious harm." *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (quotation marks and emphasis removed). Without an expert, Phoenix may face challenges proving the symptoms he experienced are attributable to Ohai's actions, which may curtail Phoenix's ability to prove damages. See *Price v. City of Charlotte*, 93 F.3d 1241, 1246 (4th Cir. 1996) ("[T]o recover more than nominal damages" in a Section 1983 suit, "actual injury caused by the constitutional violation must be proved by sufficient evidence."). But—even without an expert—the record is sufficient for Phoenix to prevail on his claim by showing that the "absence of" the special diet order

15

"exposed" him "to a substantial risk of serious harm." *Heyer*, 849 F.3d at 211.

* * *

The district court granted summary judgment to Ohai and Amonette because it concluded that Phoenix needed an expert witness. That was legal error. We thus vacate the district court's judgment and remand for further proceedings consistent with this opinion.[3]

*SO ORDERED*

---

[3] We decline to consider Ohai's argument that we should affirm on the alternative ground that the second supplemental declaration he filed along with his renewed summary judgment motion renders Phoenix unable to create a genuine dispute of material fact about whether Ohai was subjectively aware that Phoenix had celiac disease. The district court did not consider that argument or the declaration, and Phoenix argues that the new declaration is procedurally improper because it seeks to relitigate matters resolved by the district court's first summary judgment order. See *Carlson*, 856 F.3d at 326 (noting this Court has "consistently affirmed denials of motions to reconsider summary judgment rulings where the motion is merely a vessel for the very evidence that was initially lacking"). "Mindful that we are a court of review, not of first view, we leave any such questions to the court of first instance." *United States v. Buster*, 26 F.4th 627, 636 n.3 (4th Cir. 2022) (brackets, quotation marks, and citation removed).

WILKINSON, Circuit Judge, concurring in part and dissenting in part:

I readily concur in Judge Heytens's fine analysis in Section II that the district court did not abuse its discretion in reconsidering the earlier summary judgment ruling. I also agree with Section III.A that there was legal error here and join in the judgment. The fact that experts may be helpful to a prison inmate's claim of inadequate medical care does not mean that experts are required in every case.

I disagree, however, with the majority's decision to reject the defendants' position on the merits in this appeal. Frequently the Supreme Court announces stringent limitations on a cause of action, only to see the limitations diluted by the Courts of Appeal. The circuit decisions are both so numerous and so fact specific as to be uncertworthy. And the Supreme Court's ruling goes effectively unenforced.

That's essentially what happened here. While lip service is often given the "deliberate indifference" standard, it is a negligence standard that is often applied to these cases in practice. The majority's rendition of the evidence here may create an issue of triable fact as to Ohai's negligence, but "deliberate indifference" requires a culpability measurably greater than mere carelessness. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

The majority faults Ohai for not being more insistent on the matter of Phoenix's gluten-free diet and more attentive to Phoenix generally. There was, however, evidence that Ohai saw Phoenix as a patient numerous times. Ohai provided care to Phoenix by ordering medications and tests and advising Phoenix on a special diet that he sometimes

17

chose not to follow. He sent Phoenix to the emergency room when his condition so required. The majority acknowledges some of this evidence in its opinion, but then astonishingly turns the evidence against Ohai and views his various interactions with Phoenix as evidence of indifference. While Phoenix disagrees with the treatment he received, he does not dispute that treatment occurred. Phoenix's claim is not of deliberate indifference, but instead describes, at most, "a constitutionally noncognizable instance of medical malpractice." *Neitzke v. Williams*, 490 U.S. 319, 321–22 (1989).

A constitutional cause of action, moreover, is not the only game in town. The state prison system, here Virginia's, regulates those who work in it, and states themselves are free to calibrate state causes of action as they see fit. Dropping constitutional negligence into this mix, as the majority does here, is an unwarranted rebuke to the state's sovereign right to govern its own institutions. *See Procunier v. Martinez*, 416 U.S. 396, 404–406 (1974).

At the very least, I would give the able district judge the opportunity to review the summary judgment record under what the majority identifies as the correct legal standard. The parties should be granted leave to supplement that record. The merits briefing here was skimpy. Indeed, the defendants' brief to this court hardly discussed the merits of summary judgment under the correct legal standard, and Phoenix expressly contemplated the appropriateness of remand on the merits of the summary judgment motion if we held in his favor that an expert was not required. Appellant's Opening Br. at 24.

The majority's premature ruling regrettably trespasses on the role of district courts, on the fair process due the parties, on the meaning of deliberate indifference in our own

18

deliberations, on the authority of states to govern their own institutions, and on the need for prison doctors to have some semblance of the protections that physicians outside these facilities enjoy. We do inmates no favor in telegraphing unique burdens that will make prison practice a medical professional's least attractive option.